ROBERT DALE ENGEL, Petitioner-Appellant, *v.* EDWARD CAPUTO *et al.*, Respondents-Appellees.

Third District   No. 77-441

Opinion filed September 11, 1978.

BARRY, P. J., dissenting.

William F. Bochte, of Elburn, for appellant.

Frank Yackley, State's Attorney, and Joseph E. Lanuti, both of Ottawa, for appellees.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This appeal is from the judgment of the circuit court of La Salle County after a bench trial granting the motion of respondent, Edward Caputo, to dismiss the action of petitioner-appellant, Robert Engel, at the close of petitioner's case. The underlying action was brought by petitioner to contest the election for road commissioner held on April 5, 1977, in Brookfield Township, La Salle County, Illinois. Respondent, Edward Caputo, the incumbent road commissioner, was a candidate in the election. Robert Engel, Edward Caputo and Andrew Hochstetler were the candidates whose names appeared on the official ballots for office. 330 votes were cast. Edward Caputo received 172 votes, Robert Engel received 151 votes and Andrew Hochstetler received 7 votes. Thirty absentee ballots were cast in the election. This appeal is brought by petitioner, Robert Engel.

The conduct of elections in Illinois is governed by the Election Code (Ill. Rev. Stat. 1975, ch. 46, pars. 1—1 though 30—3). (*Drolet v. Stentz*, 83 Ill. App. 2d 202, 227 N.E.2d 114.) Petitioner alleges the following irregularities constituted violations of the Election Code:

1. The absentee ballots were not properly processed;

2. The absentee voter list for posting was not kept in a conspicuous place accessible to the public;

3. Absentee voters' names were not announced as required;

4. Absentee ballots may have been placed in the ballot box prior to the close of the polls;

5. Two of the five election judges were not properly appointed or certified;

6. Respondent and his wife approached and spoke with citizens as they came into the polling place; and

7. Respondent candidate took a portion of the ballots in hand, read from the ballot the names of the candidates voted for and orally announced the name of such candidate so that the same could be tallied.

Due to the view we take of this case the only contention we need deal with on this appeal regards the action of the successful candidate Caputo handling the ballots, reading the votes thereon and announcing the votes on each ballot. We feel this issue is dispositive of this appeal.

Respondent concedes he handled the ballots, read the votes thereon and announced the votes on each ballot. There is no evidence that any judge or poll watcher participated with the respondent in reading the ballots or verified the respondent's announcement of the votes on the ballots. Respondent contends that after the polls were closed and all the ballots were in the ballot box one of the judges received a foreign particle in his eye and therefore had difficulty seeing. The counting of the ballots was then held up. Respondent offered to assist in the counting. The election judges asked the two poll watchers if it would be all right for respondent to help. Petitioner's poll watcher said she didn't care and Caputo's poll watcher raised no objection. Caputo helped call somewhere between 40 and 50 ballots and when he had stopped counting he went over to petitioner's poll watcher who said she had been keeping her own tally and up to that time it showed Caputo was losing.

Respondent argues there was no fraudulent conduct or wrongful intent or any injury resulting to the election process or any candidate, relying on *Hodge v. Linn*, 100 Ill. 397. In this 1881 decision the Illinois Supreme Court held mere irregularities in conducting an election or in counting the votes which did not involve any wrongful intent, did not deprive any legal voter of his vote, or did not change the result of the election, will not vitiate the election. The court rejected the contention that the procedures of the Election Code were mandatory. Noncompliance with Election Code procedures in and of itself was insufficient to vitiate the election. However, we note in *Hodge* the factual situation was far different from

that in the instant case. Here the candidate for election was the one who took possession of ballots and ascertained and announced the votes thereon, unverified by any judge. This has not been the factual situation in any case of which we are aware or to which respondent has directed our attention.

We find no support in the law for the contention that such a flagrant violation of the Illinois Election Code can be harmless error. The Code prohibits candidates for office from being election judges at the election. (Ill. Rev. Stat. 1975, ch. 46, par. 13—4.) We cannot imagine any circumstances which would justify a candidate taking possession of ballots and ascertaining and declaring the vote for his office from the individual ballots. Accordingly, in order to uphold the sanctity of ballots and the integrity of the entire election process, we hold the election results for road commissioner must be vitiated.

For the foregoing reasons the judgment of the circuit court of La Salle County is reversed and remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

STENGEL, J., concurs.

Mr. PRESIDING JUSTICE BARRY, dissenting:

I respectfully dissent from the decision reached in the majority opinion. I believe the result of the trial court was proper and should be affirmed. Nevertheless, I do agree with much of the majority opinion's commentary on the abuse that occurred in the election process here.

The record leaves no doubt that candidate Caputo actually touched the ballots and read aloud the results for each office voted on the ballots that he read to the election judges doing the tally sheets. Caputo so participated in reading a relatively small percentage of the actual ballots cast and did so with the express approval of the election judges and the poll watchers, including his opponent's poll watcher. The trial court properly concluded from this evidence that no fraud actually resulted in the election because of Caputo's handling of the ballots. The trial court further made a finding that there was no evidence of alleged irregularities otherwise. The record contains the corroborating testimony of Jerome Diss in support of the statement of Caputo that he offered to assist the election judges only when election judge Diss discovered a foreign particle in his eye and had difficulty seeing. Caputo's opponent's poll watcher, Sandra Miney, unequivocally testified that she did not object to Caputo helping the election judges and that her permission was sought beforehand. Of all the people present in the polling place during the count no one made

any allegation of any specific fraudulent miscounting or wrongdoing by Caputo. In fact Engel's poll watcher, Sandra Miney, testified that she had been keeping her own tally of the votes when Caputo called them out and her tally showed Caputo losing at the time he finished calling the ballots he was allowed to read.

I conclude, as did the trial court, that although the opportunity existed for Caputo to act fraudulently with regard to the counting of the ballots, no evidence was produced that Caputo did act fraudulently. Based upon these facts as they appear in the record on appeal, I cannot agree with the conclusion of the majority opinion that Caputo's actions tainted the sanctity of the ballots and the entire election process. I do not condone the actions of candidate Caputo. I find them to be not only irresponsible and politically unethical, but totally inconsistent with the normal functioning of our democratic electoral process. I do not, however, find them sufficient to per se cause the results of an apparent valid election to be vitiated as does the majority opinion.

However, I do believe that candidate Caputo's actions as the evidence presents them, normally should have been sufficient for the trial court to order a recount of all the legal ballots cast on that election day for the office of Road Commissioner of Brookfield Township. Such a recount would have been determinative of the issue of whether Caputo's actions were indeed fraudulent, as alleged, and whether they affected the results of the election.

Appropriate to consider in this case is the statement in *Kreitz v. Behrensmeyer* (1888), 125 Ill. 141, 173, 17 N.E. 232, 242, "If the petitioner makes a prima facie case that there is a necessity that they be recounted, and that they have not been tampered with, the order to that effect will be made." In the instant case, however, the evidence contained in the record reflects that many opportunities existed for someone other than the town clerk to tamper with and have access to the ballots after the election and prior to the time of delivery to the trial court. The evidence showed that the ballots were turned over to Robert Widman, the town clerk, on the evening of the election after having been counted and were placed by him in a file in his office. Several people had access to the town clerk's keys, as well as keys of other persons to the town hall building. The town hall building was a multipurpose building used by several different organizations. The various keys which were outstanding, along with the town clerk's keys, would open not only the building but the town clerk's office and any file in his office. One of the persons who had these keys was the wife of the losing candidate for Brookfield Township Road Commissioner, the petitioner-appellant, Robert Dale Engel. It is obvious the ballots were not properly preserved for purposes of conducting a recount. *Eggers v. Fox* (1898), 177 Ill. 185, 52 N.E. 269.

Although I disagree with the trial court's finding that the petitioner failed to make a prima facie case to contest the election, I agree with the result of dismissing the petition because the ballots were not properly preserved and there was no evidence of any fraud. I strongly disagee with the majority opinion's position that the conduct of Caputo, even without conducting a recount, is sufficient to vitiate the election. The present facts would justify an order for a recount of the ballots and votes cast if the ballots had been properly preserved. Such a recount would be determinative of the effect on the election of Caputo's touching the ballots and calling out the votes. In the absence of the availability of the remedy of a recount, I feel compelled to affirm the judgment below for the reasons stated, thereby not upsetting the results of this election and the governmental operations of Brookfield Township.